**CAREMARK THERAPEUTIC SERVICES, Plaintiff,**

v.

**Tommy THOMPSON, Secretary of the Department of Health and Human Services, and the Centers for Medicare & Medicaid Services, Defendant.**

**No. 01 Civ. 11316(VM).**

United States District Court, S.D. New York.

Jan. 27, 2003.

Abraham Wax, P.C., New York City, for plaintiff.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Caremark Therapeutic Services ("Caremark") brings this action against the Secretary of the Department of Health and Human Services and the Centers for Medicare & Medicaid Services [1] in response to an overpayment determination made by an insurance carrier, Noridian Mutual Insurance Company ("Noridian") contracted by the Secretary of Health and Human Services (the "Secretary") to administer Medicare Part B claims. Caremark seeks to compel the Secretary to reopen the matter and conduct an administrative hearing, and it asserts jurisdiction under (1) the Medicare Act (the "Act"), Title XVIII of the Social Security Act, 42

U.S.C. §§ 1395 *et seq.;* (2) the common law writ of mandamus now codified at 28 U.S.C. § 1361; and (3) the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq.* The Secretary disputes the existence of subject matter jurisdiction and moves to dismiss on that basis under Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Secretary's motion is GRANTED.

### I. BACKGROUND

Title VXIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* incorporates the administrative and judicial review provisions of Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The process provides the following levels of administrative review following an initial adverse determination by the Secretary through an insurance carrier contracted to administer Medicare Part B claims. First, 42 C.F.R. § 405.807 provides for a six month limitations period, commencing with the initial determination by the carrier, in this case Noridian, during which "a party to an initial determination by a carrier, that is dissatisfied with the initial determination and wants to appeal the matter, may request that the carrier review the determination." *See* 42 C.F.R. §§ 405.807(a) and (c). Section 405.807(d) explains that "[a]ny clear expression in writing by a party to an initial determination which indicates, in effect, that he is dissatisfied with such determination by the carrier and wants to appeal the matter further constitutes a request for review."

Also, section 405.801(a) provides: "Following the carrier's review determination, the beneficiary may obtain a carrier hearing...." 42 C.F.R. § 405.801(a). This "carrier hearing" represents the next level

---

**1.** The agency presently named the Centers for Medicare & Medicaid Services was formerly known as the Health Care Financing Administration.

of administrative review and, like the carrier review request discussed above, must be requested within six months of the carrier review determination. *See* 42 C.F.R. § 405.821(c). Not only do these regulations delineate requisite and specific limitations periods, but regulations also explicitly permit a carrier to dismiss a request for a carrier hearing when presented with a noncomplying request. *See* 42 U.S.C. § 1305u(b)(3)(c); 42 C.F.R. § 405.832(c)(1). A carrier may vacate its prior dismissal of a request for a carrier hearing for good cause during the six months immediately following the notice of such dismissal. *See* 42 C.F.R. § 405.832(e). Finally, a carrier's initial or review determination may be reopened by the carrier at the carrier's discretion. *See* 42 C.F.R. § 405.841.

A hearing before an administrative law judge (an "ALJ") is also available but only if the requesting entity is "[a] party to the carrier hearing" provided for by § 405.821(c). The ALJ's decision can then be appealed to a Departmental Appeals Board. *See* 42 C.F.R. § 405.801(a). Finally, once a final decision from the Secretary is obtained, a party may seek judicial review in accordance with the provisions of 42 U.S.C. § 405(g) provided that such a civil action is commenced within 60 days of the Secretary's final decision. *See* 42 U.S.C. §§ 1395ff(b), 1395ii; 42 U.S.C. § 405(g).

Caremark provides health care services.[2] Noridian is a carrier contracted by the Secretary to administer Medicare payments. *See* 42 U.S.C. § 1395u; 42 C.F.R. §§ 421.5, 421.100, 421.200. Caremark submitted claims under Medicare Part B for payment of services it rendered, including pharmaceutical services and infusion therapy totaling $185,636.04 to Noridian, which initially paid these claims. Thereafter, Noridian determined that Caremark had been overpaid in that the services at issue were not covered by Medicare Part B. Noridian therefore notified Caremark on March 23, 2000 of its conclusion of overpayment and requested that Caremark repay the money it had mistakenly received.

On October 24, 2000, Caremark wrote to the Noridian Medicare Part B Hearings Department seeking a "detailed explanation" of its requested repayment. Noridian treated this letter as a request for a carrier hearing, which Noridian denied because the letter was sent after the six month limitation period prescribed by 42 C.F.R. § 405.807(c) for such hearings. On February 15, 2001, Caremark wrote Noridian to request a "reopening" of Noridian's decision regarding its overpayment determination. In this letter, Caremark admitted that it had missed the six month deadline and attributed the mistake to a discharged employee. (Complaint dated December 4, 2001, at Ex. 6.) In a letter dated February 21, 2001, Noridian denied Caremark's request to reopen the matter, citing Caremark's noncompliance with the six month limitation period. Caremark then wrote Noridian on September 14, 2001 to request a hearing before an administrative law judge, and in a letter dated September 18, 2001, Noridian reiterated that Caremark's noncompliance with the six month deadline foreclosed any further appeal rights and declined Caremark's request. Caremark commenced the present action on December 10, 2001, seeking an order of mandamus directing the Secretary to reopen the matter of No-

---

**2.** The factual recitation is taken from information contained in the Secretary's notice of motion dated April 5, 2002 and accompanying exhibits, and in Plaintiff's Affidavit In Opposition De [sic] Defendant's Motion To Dismiss The Complaint dated May 30, 2002 and accompanying exhibits. Additional citations appear as necessary.

ridian's overpayment determination and provide an administrative hearing.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ The Secretary moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting lack of subject matter jurisdiction. Caremark, as the plaintiff asserting proper jurisdiction, has the burden of establishing this Court's subject matter jurisdiction by a preponderance of the evidence. *See Luckett v. Bure,* 290 F.3d 493, 497–98 (2nd Cir.2002); *Makarova v. United States,* 201 F.3d 110, 113 (2nd Cir.2000).

### B. *JURISDICTION UNDER 42 U.S.C. §§ 1395ff(b) AND 405(g)*

Caremark asserts jurisdiction under the Medicare Act. Sections 1395ff(b)(1)(A) and 405(g) together grant the district court jurisdiction to review a "final decision of the [Secretary] made after a hearing...." On this question, the United States Supreme Court has explained that "[t]o obtain a 'final decision' from the Secretary, a claimant is required to exhaust his administrative remedies by proceeding through all three stages of the administrative appeal process. Only a claimant who proceeds through all three stages receives a final decision from the Secretary." *Bowen v. New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). This requirement, according to the Supreme Court, is "central to the requisite grant of subject matter jurisdiction—the statute empowers the district courts to review a particular type of decision by the Secretary, that type being those which are 'final' and 'made after a hearing.'" *Weinburger v. Salfi,* 422 U.S. 749, 764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In this case, Caremark's passage through the stages of administrative appeal was derailed from the start by its untimely request for a review of Noridian's overpayment determination, which Caremark itself admits was made after the six month limitations period prescribed by § 405.807(c). Having failed to proceed through any stage in the administrative appeals process, let alone all of them, Caremark failed to exhaust its administrative relief options and failed to obtain a final decision from the Secretary; Noridian's initial overpayment determination, occurring prior to the administrative appeals process, does not constitute a final decision.

Caremark argues that the exhaustion requirement is obviated by the substance of its challenge to Noridian's overpayment determination, which Caremark couches in due process terms. Caremark argues that Noridian's determination did not comply with the Secretary's regulations and, accordingly, deprived Caremark of due process. Caremark argues that because constitutional challenges to administrative proceedings can be brought without exhausting the available avenues of administrative relief, the exhaustion requirement is obviated here and the Court has jurisdiction. (Plaintiff's Memorandum of Law In Opposition To Defendant's Motion To Dismiss dated May 30, 2002 ("Pl.Br."), at 5.)

■ Caremark's assertion lacks merit. Its vague invocation of due process notwithstanding, Caremark's complaint in substance is with Noridian's alleged misapplication of applicable regulations in reaching its determination of overpayment. Interpreting prior Supreme Court holdings on the matter, the Second Circuit concluded that "federal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation ... but jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regula-

tions...." *Kuritzky v. Blue Shield of Western New York, Inc.*, 850 F.2d 126, 127 (2nd Cir.1988) (citations omitted); *see Walsh v. McGee*, 899 F.Supp. 1232, 1238–39 (S.D.N.Y.1995) (same); *Abbey v. Sullivan*, 788 F.Supp. 165, 170 (S.D.N.Y.1992) (same). Here, Caremark says nothing about invalid rules or regulations but, rather, that applicable regulations were misapplied or ignored. (*See, e.g.*, Pl. Br. at 5, 6 ("Noridian failed to comply with the Medicare regulations, and, in fact, violated its own regulations.") ("[Noridian] was not proceeding according to the regulations....").)

For the reasons discussed above, the Court concludes that 42 U.S.C. §§ 1395ff(b) and 405(g) do not provide a basis for subject matter jurisdiction over Caremark's claims.

### C. *JURISDICTION IN MANDAMUS*

■ Caremark also endeavors to proceed under this Court's mandamus power, codified at 28 U.S.C. § 1361, which grants this Court "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an "extraordinary writ" whose power must be exercised cautiously. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Aguinda v. Texaco*, 241 F.3d 194, 200 (2nd Cir.2001).

The Second Circuit has instructed that to merit mandamus relief, a party "must show that he or she lacks an adequate alternative means to obtain the relief sought, and must demonstrate a clear and indisputable right to the issuance of the writ, amounting to a clear abuse of discretion or usurpation of ... power." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233–34 (2nd Cir.1993) (citing *Mallard v. United States District Court*, 490 U.S. 296,

309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). The Supreme Court has further elaborated that the "common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

■ As discussed in Section II.B *supra*, Caremark failed to exhaust its administrative relief options by failing to request a carrier review in a timely manner, that is, within six months of the overpayment notification. Caremark admits as much in its February 15, 2001 letter seeking a "reopening and reversal" of this determination, wherein it blamed its tardiness on an errant employee.

Additionally, Caremark's requested reopening of the matter of Noridian's overpayment determination is not a proper subject of mandamus relief because a carrier's decision to reopen a prior determination, by the plain language of 42 C.F.R. § 405.841, is not nondiscretionary. *See* 42 C.F.R. § 405.841 ("An initial or review determination ... *may* be reopened ...." (emphasis added)); *Your Home Visiting Nurse Serv., Inc. v. Shalala*, 525 U.S. 449, 456–57, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999) ("The reopening regulations do not require reopening, but merely permit it."); *Good Samaritan Hosp. Reg'l Med. Ctr. v. Shalala*, 894 F.Supp. 683, 695 (S.D.N.Y. 1995) ("[A] decision to reopen is completely within the province of the intermediary."). For these reasons, Caremark has failed to establish the prerequisites for jurisdiction in mandamus.

### D. *JURISDICTION UNDER THE ADMINISTRATIVE PROCEDURE ACT*

Caremark also asserts subject matter jurisdiction pursuant to the APA to review

Noridian's decision not to reopen and reexamine its initial determination of overpayment under 42 C.F.R. § 405.841. The Court rejects Caremark's assertion.

■ The APA, by its own terms, does not apply to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Section 405.841 provides, in relevant part: "An initial or review determination ... *may* be reopened ...." (emphasis added). As discussed in Section II.C *supra*, the Supreme Court has ruled that "[t]he reopening regulations do not require reopening, but merely permit it." *Your Home*, 525 U.S. at 456–57, 119 S.Ct. 930. The Supreme Court in *Your Home* went on specifically to hold, regarding the APA, that "the decision whether to reopen ... is committed to the agency discretion by law within the meaning of the Administrative Procedure Act, and hence is unreviewable." *Id.* (citations omitted) (internal quotations omitted) ("In addition, however, we have long held that this provision is not an independent grant of subject—matter jurisdiction." (citing *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977))); *see also Abbey*, 978 F.2d at 42–43 (in rejecting assertion of federal question jurisdiction under 28 U.S.C. § 1331, Second Circuit held that "the Social Security Act provides the exclusive authority for exercising jurisdiction over [Medicare] Part B disputes.").

For these reasons, the Court concludes that the APA does not provide a proper basis to assert subject matter jurisdiction over Caremark's claims.

### III. *CONCLUSION AND ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Secretary's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**