Helena WALSH (as representative of Sister Mary Hogan, deceased), Margaret Toscano, Albert Hays, Charles Becker, Virginia Congro, Serafino Giannola, Julia Gold (as representative of Morris Gold, deceased), Michael Granelli, Mary O'Connor, Charles Pascarella (as representative of Margaret Pascarella), James Saccardi, and Richard Janik, Plaintiffs,

v.

John McGEE, William C. Woodson, Louis Sullivan, William Toby, and Empire Blue Cross and Blue Shield, Defendants.

No. 89 Civ. 1310 (DNE).

United States District Court, S.D. New York.

Oct. 11, 1995.

Whitney North Seymour, Jr., Brown & Seymour, New York City, for Helena Walsh, Margaret Toscano, Albert Hays.

Nancy L. Savitt, Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for William Toby, Otis R. Bowen, Louis Sullivan, Empire Blue Cross, William C. Woodson, John McGee, Empire Blue Cross & Blue Shield.

## OPINION & ORDER

EDELSTEIN, District Judge:

This case arises under the Medicare Act, ("Medicare" or "the Act"), Title XVIII of the Social Security Act, 42 U.S.C.S. §§ 1395–1395ccc. Plaintiffs, Medicare Part B claimants, allege that defendants, Medicare Part B administrators, wrongly underpaid plaintiffs' Medicare claims, mishandled plaintiffs' appeals of these claims, and, consequently, violated plaintiffs' procedural due process rights under the Fifth Amendment to the United States Constitution. As relief, plaintiffs seek: (1) injunctive relief to prevent defendants' alleged misconduct with respect to Medicare Part B appeals; (2) a declaratory judgment that defendants' actions were unlawful and violated plaintiffs constitutional due process rights; and (3) a writ of mandamus directing the defendants who are hearing officers to vacate and set aside their decisions regarding plaintiffs' Medicare claims and to conduct new hearings on these claims. In response, Defendants contend: (1) that this Court lacks subject matter jurisdiction over plaintiffs' claims; (2) plaintiffs' claims do not present justiciable constitutional issues; and (3) plaintiffs fail to meet the prerequisites for the issuance of a writ of mandamus.

Currently before the Court are plaintiffs' and defendants' respective motions for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56(b), as well as defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). Because this Court lacks subject matter jurisdiction over plaintiffs' claims, defendants' Rule 12(b)(1) motion is granted. Moreover, because this Court lacks subject matter jurisdiction, plaintiffs' motion for a writ of mandamus is dismissed.

## BACKGROUND

Medicare establishes programs to provide medical benefits for the aged and disabled. It consists of two separate plans. Medicare Part A establishes major medical insurance coverage for hospital care and related post-hospital services and is funded by Social Security taxes. 42 U.S.C. §§ 1395c–i. Part B creates a voluntary program of supplementary medical insurance for persons who are disabled or over sixty five years of age. 42 U.S.C. §§ 1395j–w. This action solely concerns Part B.

Part B is analogous to a private medical insurance program subsidized by the federal government. Enrolled individuals pay monthly premiums that, together with contributions from the federal government, 42 U.S.C. §§ 1395r, 1395t, 1395w, secure coverage for the reasonable cost of specified medical services that are excluded from Part A, such as physician services, out-patient therapy, medical equipment, and laboratory testing. 42 U.S.C. § 1395l; 42 C.F.R. § 405.231. The Secretary of Health and Human Services ("HHS") contracts with private insurance carriers to process Part B claims, 42 U.S.C. § 1395u, in order to profit from their "great experience," S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N., 1993, and thereby administer the program "with maximum efficiency and convenience." 42 U.S.C. § 1395u(a).

*Schweiker v. McClure,* 456 U.S. 188, 190, 102 S.Ct. 1665, 1667, 72 L.Ed.2d 1 (1982); *Isaacs v. Bowen,* 865 F.2d 468, 470 (2d Cir.1989).

The Medicare Act sets forth the procedures private insurance carriers must use to process Part B claims. These procedures direct a Part B enrollee to submit claims for services directly to the carrier in the enrollee's geographic area. The carrier then reviews the claim to determine whether the medical service at issue is within the scope of Part B, whether it was "reasonable and necessary" under the circumstances, and whether its cost was "reasonable." 42 U.S.C. §§ 1395u(b)(3), 1395y(a); 42 C.F.R. §§ 405.501, 421.200. While the Act instructs carriers to consider specific criteria in making these determinations, a carrier may take into account additional factors that it deems necessary to its evaluation. 42 C.F.R. § 405.502(a)(7). If a carrier finds that the claim meets all coverage criteria, it pays enrollee's benefits from federal funds according to Medicare guidelines. 42 U.S.C. § 1395u. In the event an enrollee disputes a carrier's reimbursement determination, Part B details procedures he can use to challenge it. 42 U.S.C. § 1395ff.

Specific provisions of the Medicare Act govern reimbursement disputes concerning Part B services rendered prior to January 1, 1987. 42 U.S.C. §§ 1935u(b)(3)(C), 1395ff, 1395ii. Under these provisions, a claimant who is dissatisfied with a carrier's initial disposition of his claim is entitled to *de novo* review of the claim by the carrier. 42 C.F.R. §§ 405.807–812. In addition, if the amount in controversy exceeds $100, the claimant is entitled to a "fair hearing" before an officer chosen by the carrier. 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.801, .820; *McClure,* 456 U.S. at 191, 102 S.Ct. at 1668. Fair hearing officers must evaluate each claim in accordance with the Medicare Act, HHS regulations, and the Health Care Finance Administration's ("HCFA") policy statements. 42 C.F.R. § 405.860. The HCFA's Medicare Carrier's Manual ("MCM") provides the primary procedural guidelines for fair hearings.

Decisions rendered by fair hearing officers are final and binding. 42 C.F.R. § 405.835. The Medicare statute explicitly precludes judicial review of fair hearing officers' decisions regarding the amount of benefits due a claimant under Part B. 42 U.S.C. § 1395ii (incorporating 41 U.S.C. § 405(h)); *United States v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982); *Anderson v. Bowen,* 881 F.2d 1, 3 (2d Cir. 1989); *Kuritzky v. Blue Shield of Western New York, Inc.,* 850 F.2d 126, 127 (2d Cir. 1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989).[1]

The instant case concerns the Part B review process. Plaintiffs are twelve enrollees or representatives of enrollees in Medicare Part B. Defendants are the Secretary of HHS, officials of the HCFA, Empire Blue Cross and Blue Shield ("Blue Cross"), the private insurance carrier which administers plaintiffs' Medicare insurance in the New York area, and the Medicare hearing officers who handled plaintiffs' claims.

Plaintiffs assert that Blue Cross "wrongly underpaid" their Part B reimbursement claims for medical services rendered prior to January 1, 1987. (Plaintiffs' Memorandum of Law in Support of Summary Judgment ("Pls.' Memo") at 2.) To challenge these alleged underpayments, plaintiffs exercised their rights under the Act and requested fair hearings. (Pls.' Complaint at 3.) Plaintiffs complain that, throughout the fair hearing process, Blue Cross and the hearing officers who handled plaintiffs' claims "violated the clear mandates of the law and regulations regarding plaintiffs' 'fair hearing' rights." (Pls.' Memo at 9.) According to plaintiffs, these violations denied them proper reimbursement for their medical expenses as well as their rights to due process under the Fifth

---

1. In 1986, Congress amended the Medicare Act to permit judicial review of certain Part B amount determinations. Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9341, 100 Stat. 1874, 2037–38 (1986) (codified at 42 U.S.C. § 1395ff). These amendments, however, apply only to Medicare services rendered after January 1, 1987. Because plaintiffs' claims all concern services provided prior to this date, (Pls.' Complaint at 9), the amendments are inapplicable to their case and further discussion of them is unnecessary. *Anderson,* 881 F.2d at 3 n. 5; *Kuritzky,* 850 F.2d at 127 n. 1.

Amendment to the Constitution. (Pls.' Memo at 7, 18.)

Although plaintiffs' papers set forth these alleged violations in painstaking detail, plaintiffs' claims are easily summarized. Plaintiffs allege that, after they requested their fair hearings, defendants failed to provide them with adequate notice of the specific issues to be determined at these hearings. (Pls.' Memo at 2.) Plaintiffs also attack defendants' failure to schedule the fair hearings according to plaintiffs' preferences. (Pls.' Complaint at 10–12.) Plaintiffs further claim that defendants denied plaintiffs access to discovery materials that plaintiffs needed to prepare for the fair hearings. (Pls.' Memo at 7–8.) Finally, plaintiffs claim that defendants ignored the procedural rules governing Part B fair hearings. *Id.* at 14. In each instance, plaintiffs rely on Part B regulations and the MCM to support their claims that defendants' conduct was illegal and unconstitutional.

Plaintiffs claim that defendants' deviations from Medicare Part B appeals procedures deprived plaintiffs of due process of law. Defendants contend that plaintiffs claims are beyond the scope of this Court's subject matter jurisdiction and, alternatively, fail to present this Court with a genuine constitutional controversy. Plaintiffs moved for summary judgment pursuant to Rule 56(b). Defendants cross-moved for summary judgment and moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

*DISCUSSION*

■ Federal courts are courts of limited jurisdiction. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 173–80, 2 L.Ed. 60 (1803); *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320, 321 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). They may hear only those cases within the bounds of Article III of the United States Constitution and Congressional enactments stemming therefrom. *Marbury,* 5 U.S. at 173–80; *W.G. v. Senatore,* 18 F.3d 60, 64 (2d Cir.1994). Thus, a court faced with several procedural and substantive motions is obliged to consider juris-

dictional issues first. If a case is dismissed for lack of subject matter jurisdiction, all other matters are moot. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990); 5A Wright & Miller, Federal Practice & Procedure: Civil § 1350, at 210–11 (2d ed. 1990).

■ In analyzing a 12(b)(1) motion directed at a suit based on an alleged federal question, a court must determine whether plaintiffs' claim a violation of federal law and whether this claim "is neither immaterial nor insubstantial." *Goldman v. Gallant Sec., Inc.,* 878 F.2d 71, 73 (2d Cir.1989) (citations omitted); *see also* 5A Wright & Miller, Federal Practice & Procedure: Civil § 1350, at 210–11 (2d ed. 1990). The party asserting that a federal court has subject matter jurisdiction over its cause of action has the burden of proving its assertion. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994).

Defendants' Rule 12(b)(1) motion challenges this Court's subject matter jurisdiction over plaintiffs' claims. Plaintiffs assert that this Court has jurisdiction pursuant to the federal question statute, 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and the federal mandamus statute, 28 U.S.C. § 1361. (Pls.' Complaint at 1.) Defendants counter that all three bases of jurisdiction are inapplicable to plaintiffs' case. The Court addresses each jurisdictional argument in turn.

*1. Federal Question Jurisdiction*

■ A federal court has subject matter jurisdiction to hear "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Although plaintiffs' constitutional complaint appears to fall squarely within the scope of this jurisdiction, Medicare case law cautions that allegations of constitutional deprivation alone are insufficient to confer federal jurisdiction over Medicare Part B disputes. *Anderson,* 881 F.2d at 5; *Kuritzky,* 850 F.2d at 128. Rather, because federal judicial review of these claims is very limited, *Kuritzky,* 850 F.2d at 128, courts must scrutinize a claim's underly-

ing substance to verify that it is not an unreviewable Part B challenge "recloaked in constitutional garb" to avoid dismissal. *Anderson*, 881 F.2d at 5. A three-part rule governs such determinations.

■. First, as discussed above, the Medicare Act explicitly bars judicial review of the amount of benefits payable under the Part B program.. 42 U.S.C. § 1395ff(b). The Supreme Court in *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), found the Act's "precisely drawn provisions" deliberately foreclose access to the federal courts for enrollees challenging hearing officers' determinations of the amount of Part B payments. *Id.* at 208, 102 S.Ct. at 1654. Consequently, federal courts lack jurisdiction under § 1331 to review a Medicare carrier's determination regarding the amount of a Part B enrollee's benefits. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 676–77, 106 S.Ct. 2133, 2139–40, 90 L.Ed.2d 623 (1986); *Anderson*, 881 F.2d at 3; *Kuritzky*, 850 F.2d at 128; *see also Michigan Ass'n of Indep. Clinical Labs. v. Shalala*, 52 F.3d 1340, 1344–45 (6th Cir. 1994); *Texas Medical Ass'n v. Sullivan*, 875 F.2d 1160, 1164–65 (5th Cir.), *cert. denied*, 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989); *Medical Fund–Philadelphia Geriatric Ctr. v. Heckler*, 804 F.2d 33, 38 (3d Cir. 1986).

■ Second, federal courts have subject matter jurisdiction over challenges to the validity of Part B rules or regulations. *Michigan Academy*, 476 U.S. at 680, 106 S.Ct. at 2141. The Supreme Court has held that, although Congress intended to preclude judicial review of the amount of benefits to be awarded under Part B, this bar "simply does not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves." *Id.* at 675, 106 S.Ct. at 2138. Applying this method/amount distinction, the Court held that federal courts have subject matter jurisdiction over challenges to the validity of Part B rules or regulations under 28 U.S.C. § 1331. *Id.* at 680, 106 S.Ct. at 2141; *see also Cosgrove v. Sullivan*, 999 F.2d 630, 632 (2d Cir.1993); *Kuritzky*, 850 F.2d at 128; *American Ambulance Serv. of Pa., Inc.*

*v. Sullivan*, 911 F.2d 901, 905 (3d Cir.1990); *Linoz v. Heckler*, 800 F.2d 871, 878 (7th Cir.1986); *Abbott Radiology Assocs. v. Sullivan*, 801 F.Supp. 1012, 1018 (W.D.N.Y.1992); *Griffith v. Bowen*, 678 F.Supp. 942, 945 (D.Mass.1988).

■ Third, federal courts lack subject matter jurisdiction over controversies regarding the application or interpretation of Part B rules or regulations. The Second Circuit has explained that *Michigan Academy*'s method/amount distinction "clearly refers to the distinction between rules, regulations, and statutes setting forth the proper computation method and the carrier's application of those provisions in determining the benefits owed." *Kuritzky*, 850 F.2d at 128. Consequently, the court found "that federal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation, but jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations." *Id.* (citations omitted); *see also Michigan Ass'n of Indep. Clinical Lab. v. Shalala*, 52 F.3d 1340,.1345 (6th Cir.1994); *Cosgrove*, 999 F.2d at 632; *Anderson*, 881 F.2d at 3–4, *aff'g*, 87 Civ. 4048, slip. op., at 11–12 (S.D.N.Y. Nov. 17, 1988); *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 164–65 (1st Cir.1987); *Medical Fund–Philadelphia Geriatric Center v. Heckler*, 804 F.2d 33, 39 (3d Cir.1986); *Linoz v. Heckler*, 800 F.2d 871, 876 (9th Cir.1986); *Pavano v. Shalala*, No. 94 Civ. 0359, 1995 WL 296732, at *8 (S.D.N.Y. May 16, 1995).

■ As the previous discussion illustrates, the question whether this Court has federal question jurisdiction turns on whether plaintiffs challenge the amount of benefits payable under the Part B program, the validity of Part B rules and regulations, or the application of Part B rules and regulations in this case. Plaintiffs claim that they do not challenge the amount of benefits they received under the Part B program; instead, they assert that their claims "arise under the Constitution," (Pls.' Complaint at 1), because defendants deprived them of due process of law under the Fifth Amendment by "violat[ing]

the clear mandates of the law and regulations" regarding fair hearings. *Id.* at 9.

Plaintiffs complain that, following their requests for fair hearings, the notices they received from Blue Cross regarding these hearings were insufficiently specific to provide plaintiffs actual notice of the issues to be covered in these hearings. (Pls.' Memo at 3–7.) According to plaintiffs, these notices were "in direct violation of 42 CFR Section 405.826, MCM Sections 12017 and 12017A and the due process clause of the Fifth Amendment to the United States Constitution." *Id.* at 4.

In addition, plaintiffs allege that "defendants' failure to provide crucial discovery violated plaintiffs' constitutional right to due process." *Id.* at 7. Specifically, plaintiffs claim they were entitled to examine Blue Cross documents pertaining to changes in reimbursement policies, *id.* at 8, and computerized "stock paragraphs" used by some hearing officers as aids in the preparation of final fair hearing decisions. *Id.* at 13 n. 5; (Plaintiffs' Memorandum of Law in Reply and Opposition to Defendants' Cross–Motion for Dismissal and Summary Judgment ("Pls.' Reply") at 20.)

Plaintiffs further claim that they were wrongfully denied the opportunity to interview Blue Cross administrators as witnesses. (Pls.' Complaint at 14; Pls.' Memo at 7; Pls.' Reply at 12.) Additionally, plaintiffs contend that defendants ignored basic fair hearing standards regarding hearing scheduling and procedure. (Pls.' Complaint at 10–12, 18.)

Defendants advance three arguments in response to plaintiffs' allegations. First, defendants claim that this Court lacks subject matter jurisdiction under the "plain language" of *Kuritzky* because plaintiffs' claims challenge the manner in which defendants interpreted and applied Part B rules and regulations, not the validity of the rules and regulations themselves. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment ("Defs.' Memo") at 10). Second, defendants assert that because Medicare law delegates the authority to resolve fair hearing scheduling and discovery issues to carriers and hearing officers, all of defendants' challenged actions fall within *Michigan Academy* 's jurisdictional bar. *Id.* at 11. Finally, defendants argue that, even if Medicare law permitted judicial review of claims that deviations from Part B fair hearing rules constituted due process violations, "plaintiffs' claims of constitutional violations are so insubstantial that they cannot confer subject matter jurisdiction on this Court." *Id.* at 12.

Reviewing the parties' claims and legal arguments in light of Medicare case law, this Court finds that it lacks subject matter jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331 because plaintiffs' claims constitute unreviewable Part B challenges under *Kuritzky*. As previously noted, "jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations." 850 F.2d at 128. Plaintiffs allegations raise solely this claim. Plaintiffs allegations that defendants "violated the clear mandates of the law and regulations" regarding fair hearings, (Pls.' Complaint at 9), acted "in direct violation" of Part B regulations, *id.* at 12, 13, 15, 18, and deviated from "applicable rules and regulations," (Pls.' Memo at 14, 19), do not challenge the rules and regulations themselves. Rather, these accusations challenge the manner in which hearing officers applied the rules and regulations to their cases. In fact, plaintiffs concede the validity of the Part B rules and regulations applicable to their cases by citing them as the standards by which this Court should evaluate defendants' actions. Accordingly, this Court holds that it lacks subject matter jurisdiction over these claims under 28 U.S.C. § 1331.

Plaintiffs' arguments that this Court has subject matter jurisdiction are wholly unavailing. The case law on which plaintiffs rest their case is unpersuasive. Throughout the papers plaintiffs submitted to this Court, plaintiffs rely on an assortment of cases in which a plaintiff challenged an administrative agency's rulings in federal court. *See, e.g.,* *McClelland v. Andrus,* 606 F.2d 1278 (D.C.Cir.1979) (pertaining to Interior Department personnel reports); *Vargas v. Trainor,* 508 F.2d 485 (7th Cir.1974), *cert.*

*denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975) (regarding termination of welfare benefits provided through the program of Aid to the Aged, Blind, and Disabled, 42 U.S.C. § 1381–85 (1969)); *Housing Auth. of King County v. Pierce,* 711 F.Supp. 19 (D.D.C.1989) (resolving challenges to HUD subsidies). These cited cases, however, are inapposite, because they address challenges to administrative proceedings in a non-Medicare context.

In the absence of precedent, such cases might have been a useful source of law from which to draw analogies in support of plaintiffs' argument that this Court has subject matter jurisdiction in this case. There is, however, no absence of Medicare Part B case law. On the contrary, as previously noted, there is a sizeable body of decisional law directly on point that holds that this Court lacks jurisdiction to hear a challenge to a fair hearing officer's interpretation or application of Medicare Part B rules and regulations.

The abundance of Medicare Part B case law further highlights the inadequacy of plaintiffs' case. Careful review of plaintiffs' papers reveals that plaintiffs failed to cite any relevant Medicare case law in opposition to defendants' motion to dismiss for lack of subject matter jurisdiction. Similarly, plaintiffs cited no authority that contradicts or limits *Kuritzky*'s rule that federal courts lack subject matter jurisdiction over challenges to the application or interpretation of Part B regulations. Remarkably, plaintiffs made no attempt to distinguish *Kuritzky* and other relevant Second Circuit case law in their Reply Memo, despite defendants' reliance on this case law to support defendants' jurisdictional argument.

**2. Jurisdiction Under 28 U.S.C. § 2201–02**

 Because this Court lacks subject matter jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331, this Court also lacks jurisdiction to grant plaintiffs declaratory or injunctive relief. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, empowers a federal court to "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201. It further enables a court to provide "[f]urther necessary or proper relief

based on a declaratory judgment," 28 U.S.C. § 2202, such as an injunction, *Powell v. McCormack,* 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969), in actions within its jurisdiction. It is well settled that the Declaratory Judgment Act neither creates subject matter jurisdiction where none exists nor expands the scope of existing jurisdiction in the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). Accordingly, this Court holds that because it lacks subject matter jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331, it also lacks subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201–02.

**3. Mandamus Jurisdiction**

 The federal mandamus statute, 28 U.S.C. § 1361, provides district courts with an independent basis for jurisdiction in cases in which a government official "has failed to perform a specific statutory or regulatory directive." *Marinoff v. Department of Health, Educ. and Welfare,* 456 F.Supp. 1120, 1121 (S.D.N.Y.1978), *aff'd mem.,* 595 F.2d 1208 (2d Cir.), *cert. denied* 442 U.S. 913, 99 S.Ct. 2829, 61 L.Ed.2d 279 (1979). Mandamus is "an extraordinary remedy, and is to be employed only under exceptional circumstances, for courts will intervene to disturb determinations of administrative officials only in clear cases of illegality." *Association of American Medical Colleges v. Califano,* 569 F.2d 101, 110–11 n. 80 (D.C.Cir.1977) (citations omitted). The availability of mandamus jurisdiction in Medicare Part B cases is uncertain. When presented with this question, both the Supreme Court and the Second Circuit declined to address the issue because each found that, even if mandamus jurisdiction were available to review the Part B appeals process, its exercise would have been inappropriate. *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); *Anderson,* 881 F.2d at 5 n. 11, *aff'g,* 87 Civ. 4048 (S.D.N.Y. Nov. 17, 1989) (rejecting request for mandamus relief to permit judicial review of Medicare Part B reimbursement dispute). Identical reasoning controls the instant case.

■ Even assuming that this Court has jurisdiction to address a mandamus request arising from a Part B dispute, this court does not have jurisdiction to grant plaintiffs a writ of mandamus in this case. The stringent prerequisites for the issuance of a writ of mandamus are: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the defendant's part to do the act in question; and (3) lack of another available, adequate remedy." *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 946 (2d Cir.1976); *see also Anderson,* 881 F.2d at 5. Plaintiffs' claims do not meet all three prerequisites. Specifically, their complained of injuries arose from defendants' alleged violations of the rules and regulations governing the conduct of Medicare Part B fair hearings. (Pls.' Complaint at 9.) Medicare law, however, affords defendants both flexibility and discretion in their conduct of Part B fair hearings and, thus, does not create a "plainly defined peremptory duty," *Billiteri,* 541 F.2d at 946, which defendants owe plaintiffs. In the absence of such a nondiscretionary duty, mandamus is inappropriate. *Heckler,* 466 U.S. at 616, 104 S.Ct. at 2022; *Anderson,* 881 F.2d at 5; *Billiteri,* 541 F.2d at 946.

In sum, this court lacks jurisdiction over the subject matter of plaintiffs' claims under the federal question statute, 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. § 2201–02, and the federal mandamus statute, 28 U.S.C. § 1362. As a result, this Court hereby grants defendants' motion to dismiss plaintiffs' complaint in its entirety, pursuant to Rule 12(b)(1). Consequently, it is unnecessary and, indeed, would be improper, to address plaintiffs' or defendants' respective motions for summary judgment, which go to the merits of the parties' claims.

The result in this case should come as no surprise to plaintiffs' counsel. Plaintiffs' counsel previously served as counsel in a very similar Medicare Part B challenge that the Second Circuit dismissed for lack of subject matter jurisdiction on the same grounds as those controlling in this case. *Anderson v. Bowen,* 881 F.2d 1 (2d Cir.1989), *aff'g,* No. 87–4048, slip. op. (S.D.N.Y. Nov. 17, 1988). Remarkably, counsel neglected to cite *Anderson* or any of the other relevant case law previously mentioned. Counsel further failed to respond to defendants' reliance on these cases in support of defendants' 12(b)(1) motion. In light of counsel's familiarity with this area of Medicare law, and his personal knowledge of *Anderson,* this Court is puzzled by counsel's failure to cite these cases.

### CONCLUSION

Defendants' Rule 12(b)(1) Motion is GRANTED.

Plaintiffs' Request for a Writ of Mandamus is DISMISSED.

Defendants' Rule 56 Motion is DISMISSED as Moot.

Plaintiffs' Rule 56 Motion is DISMISSED as Moot.

SO ORDERED.